UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CMW INTERNATIONAL LLC and EVERGREEN HOLDINGS INTERNATIONAL, LLC, | ) ) ) |
| Plaintiffs/Counter Defendants, | ) ) |
| v. | ) Case No. 1:16-cv-01384-TWP-DKL ) |
| AMERISURE INSURANCE CO., | ) ) |
| Defendant/Counter Claimant. | ) |

**ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on a Motion for Preliminary Injunction filed pursuant to Federal Rule of Civil Procedure 65 by Plaintiffs CMW International, LLC and Evergreen Holdings International, LLC (collectively, "CMW") ([Filing No. 5](#)).  CMW seeks a declaratory judgment regarding its rights in relation to its insurer, Defendant Amerisure Mutual Insurance Company ("Amerisure").  After environmental liability claims were asserted against CMW, Amerisure was notified of the claims and CMW hired defense counsel and an environmental consultant.  CMW seeks a declaration that it is entitled to retain its chosen defense counsel and environmental consultant rather than have Amerisure impose its selected defense counsel and environmental consultant on CMW.  In its Motion, CMW asks for a preliminary injunction prohibiting Amerisure from interfering with CMW's relationship with its chosen defense counsel and environmental consultant and requiring Amerisure to continue paying environmental defense costs.  For the following reasons, the Court **DENIES** CMW's Motion for Preliminary Injunction.

**I.    LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  Granting a preliminary

injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citation and quotation marks omitted). When a district court considers whether to issue a preliminary injunction, the party seeking the injunctive relief must demonstrate that:

> (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest.

*Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). The greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

## II. BACKGROUND

In the 1940's P. R. Mallory & Company ("Mallory") developed battery technology that it would later trademark under the brand name "Duracell." Mallory's Indianapolis, Indiana operations occupied a large parcel of land centered in and around 70 South Gray Street (the "Property"), where it manufactured capacitors, timers, controls and metallurgical and specialty metal products. Following a series of mergers, acquisitions and sales, the metallurgical division of Mallory was spun off into Contacts, Metals and Welding, Inc. d/b/a CMW, Inc., which operated on the property at 70 South Gray Street since 1978, and owned the Property since 1983. Plaintiff CMW is the successor in interest to CMW Inc. The remaining property surrounding the Property was occupied and used for manufacturing by a number of entities, including predecessors of Battery Properties, Inc. ("BPI").

CMW has comprehensive general liability insurance policies issued by Amerisure that provide insurance coverage for certain environmental liability claims related to the Property.

Sometime before September 2014, BPI began investigating potential environmental contamination at its property as well as CMW's Property and the surrounding area. During its investigation, BPI uncovered evidence of environmental contamination related to CMW and its predecessors' use of chlorinated solvents in their operations. Soil borings and groundwater monitoring by BPI's environmental consultant detected high concentrations of chlorinated solvents and other related products in the soil and groundwater on and around the Property. BPI reported these findings to the Indiana Department of Environmental Management ("IDEM").

On September 17, 2014, IDEM notified CMW that it was a "responsible person," allegedly responsible for environmental contamination that had been found on and around the Property. In addition, BPI has alleged that CMW is responsible for a portion of the environmental response costs related to studies about environmental contamination at the same Property. CMW faces significant exposure measured in the millions of dollars arising from the environmental contamination on and around the Property. Among other things, IDEM has demanded that CMW take certain actions to monitor and assess the contaminants' spread and impact on the area surrounding the Property. Delay in carrying out these steps could subject CMW to a regulatory enforcement action brought by IDEM.

From March 1, 1987 through March 1, 1999, and then again from October 15, 2007 through December 15, 2013, Amerisure provided insurance to CMW pursuant to commercial general liability policies. The insurance policies require Amerisure to defend and indemnify CMW against covered liability claims. The policies give Amerisure the "right and duty to defend" its insureds

against covered environmental claims. The policies also require CMW to cooperate with Amerisure in its defense of claims.

On October 17, 2014, BPI's counsel notified some of CMW's insurers that there was environmental contamination suspected at the Property. On February 19, 2015, BPI's counsel sent CMW's insurers, including Amerisure, a letter notifying them of the environmental contamination at the Property and their duty to defend and indemnify.

CMW was not satisfied with the environmental work that was being completed under the direction of BPI, so CMW hired its own environmental attorney and consultant (Ice Miller and Environmental Forensic Investigations) in September 2015. On September 11, 2015, Ice Miller sent CMW's insurers, including Amerisure, a letter informing them of CMW's retention of Ice Miller as counsel and the insurers' duty to reimburse CMW for the costs of its legal defense and environmental consulting work. The insurers, including Amerisure, were also notified of CMW's retention of Environmental Forensic Investigations on October 1, 2015. On October 15, 2015, Amerisure acknowledged receipt of CMW's letters. However, Amerisure did not address CMW's retention of Ice Miller and Environmental Forensic Investigations.

Throughout November and December 2015, Ice Miller provided progress updates on the Property to Amerisure. Amerisure never objected to this work. Amerisure promised to provide liability coverage to CMW for the IDEM and BPI environmental liability claims. Since the time Amerisure was first notified of these claims in February 2015, Amerisure has never issued a reservation of rights letter to CMW or attempted to qualify or limit its coverage obligations. From the beginning of the project through May 2016, Amerisure paid Ice Miller's and Environmental Forensic Investigations' bills submitted in connection with their work related to the Property.

On February 5, 2016, BPI sent CMW's counsel a letter further documenting its claims against CMW related to the environmental contamination at the Property. In the letter, BPI requested reimbursement for approximately $350,000.00 in past expenses related to environmental investigation and study as well as for future expenses. On February 25, 2016, the insurers, including Amerisure, informed CMW for the first time that they wanted to take over the defense of the IDEM and BPI claims and select a new defense team. This demand came five months after CMW had retained Ice Miller and Environmental Forensic Investigations and one year after Amerisure had been notified of the claims.

On May 17, 2016, Amerisure and CMW's other insurers sent CMW and Ice Miller a letter instructing CMW to transfer its legal work to counsel selected by Amerisure and informed CMW that Amerisure would no longer pay Ice Miller's legal fees for work related to the Property. As of the date of the hearing on CMW's Motion for Preliminary Injunction (October 21, 2016), Amerisure was current on paying all of Environmental Forensic Investigations' and Ice Miller's fees and costs that had been billed and submitted for reimbursement.

CMW filed its Complaint on June 6, 2016, requesting declaratory judgment regarding who gets to select CMW's defense counsel and environmental consultant, CMW or Amerisure ([Filing No. 1](#)). Under theories of waiver and estoppel, CMW asserts that it is entitled to continue using its chosen defense counsel and environmental consultant because Amerisure waited more than a year to inform CMW that it wanted to use different defense counsel and environmental consultants, and Amerisure has acquiesced by paying CMW's attorney fees and environmental consultant costs.

In its Motion for Preliminary Injunction, CMW asks that the Court enter an injunction prohibiting Amerisure from interfering with CMW's relationship with its chosen defense counsel

and environmental consultant: Ice Miller and Environmental Forensic Investigations. CMW also asks for a preliminary injunction requiring Amerisure to continue paying the invoices from Ice Miller and Environmental Forensic Investigations and to continue with the existing defense team to defend against the environmental claims asserted by IDEM and BPI against CMW.

### III. DISCUSSION

In order to obtain a preliminary injunction, CMW must show that it has a reasonable likelihood of success on the merits of its claims, that no adequate remedy at law exists, that it will suffer irreparable harm if a preliminary injunction is denied, that the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm Amerisure will suffer if the preliminary injunction is granted, and that the preliminary injunction will not harm the public interest. *Platinum Home Mortg. Corp.*, 149 F.3d at 726.

CMW argues that it will be irreparably harmed if Amerisure is permitted to force CMW to agree to use the defense counsel and environmental consultant of Amerisure's choosing at this stage of the litigation and the environmental investigation and clean-up. In particular, CMW contends that changing the defense team at this stage will make it impossible for CMW to meet its obligations to IDEM and will significantly impair the remediation efforts at the Property. CMW also asserts that a change could jeopardize its working relationship with IDEM.

In addition, CMW claims that allowing Amerisure to change the defense team will prevent CMW from using the Property and taking advantage of current development opportunities and incentives. The Property is within the Indianapolis neighborhood of Englewood Village, which was recently announced as part of the "Great Places 2020" initiative established by the City of Indianapolis in partnership with a number of nonprofits, including national community development organization Local Initiatives Support Corporation (commonly known as LISC).

The initiative's purpose is to foster sustainable redevelopment and revitalization of the City of Indianapolis. CMW explains that the Marion County Assessor's office has established the current assessed value of the Property to be $1,924,600.00, and asserts that any delay in the remediation of the Property and obtaining regulatory closure will drastically reduce the value of the Property and curtail development opportunities.

Regarding the factors for a preliminary injunction, CMW asserts that it has a likelihood of success on the merits regarding its theories of waiver and estoppel because Amerisure never objected to CMW's choice of counsel and consultant for five months and, in fact, it paid the invoices for CMW's chosen defense team. CMW points to seven cases in support of its argument that it has some likelihood of success on the merits. *See Haley v. Kolbe & Kolbe Millwork Co., Inc.*, 97 F. Supp. 3d 1047 (W.D. Wis. 2015); *American Family Mut. Ins. Co. v. Kivela*, 408 N.E.2d 805 (Ind. Ct. App. 1980); *Protective Ins. Co. v. Coca-Cola Bottling Co.*, 423 N.E.2d 656 (Ind. Ct. App. 1981); *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563 (7th Cir. 1997); *Federal Ins. Co. v. Stroh Brewing Co.*, 35 F. Supp. 2d 650 (N.D. Ind. 1998); *Indiana Ins. Co. v. Ivetich*, 445 N.E.2d 110 (Ind. Ct. App. 1983); *West v. Indiana Ins. Co.*, 264 N.E.2d 335 (Ind. Ct. App. 1970). In each of these cases, based upon the specific facts of the case, the court held that the insurer waived (or was estopped from raising) coverage defenses by untimely raising the defense.

CMW further argues that it will be irreparably harmed by Amerisure's change of defense team in the middle of the investigation and clean-up because such a change will delay the clean-up, cause IDEM deadlines to be missed, possibly damage the relationship between CMW and IDEM, and cause CMW to miss the redevelopment opportunities presented by Indianapolis' initiative.

CMW asserts that a damaged relationship with IDEM will not be remedied by a traditional legal remedy. Further, CMW asserts that the balance of harms weighs in its favor because the effects of changing its defense team (delays, damaged working relationships, and reduced property value) cannot be undone, whereas Amerisure will suffer no harm by continuing its current course of paying the invoices of CMW's current defense team.

Lastly, CMW argues that the public interest would be served by an injunction because it would allow for a speedier remediation of the Property, which would allow for productive use and revitalization of the blighted area. It also argues that the public interest is served in honoring the attorney-client relationship and allowing a client to choose its own counsel.

In responding to CMW's request for a preliminary injunction, Amerisure asserts that any delay in providing a defense before September 2015 is attributable to CMW because CMW never filed a claim with or requested a defense from Amerisure until after it had retained Ice Miller and sent a letter to Amerisure on September 11, 2015. After receiving notice from CMW in September 2015, Amerisure communicated with CMW and also tried to locate policy information for CMW, which dated back to 1987. At no time during this initial investigative period did Amerisure disclaim coverage or reserve the right to do so. Amerisure paid CMW's defense costs as they were incurred and submitted for reimbursement.

Amerisure accurately explains that CMW has conceded that general liability policies give insurers the right to control the defense of claims. Amerisure asserts that this right carries with it the right to make decisions regarding the overall conduct of the defense of the underlying litigation, which is well recognized in Indiana and elsewhere, pointing to *Armstrong Cleaners, Inc. v. Erie Ins. Exchange*, 364 F. Supp. 2d 797, 806 (S.D. Ind. 2005) ("liability insurance policies typically give the insurer control over the defense of the underlying litigation"). Amerisure's right to control

the defense comes directly from the language in the insurance contracts, which explains Amerisure's "right and duty to defend the insured." (Filing No. 1-1 at 7.) Amerisure's right to control the defense also stems from an insurer's right to protect its financial interests. *See Nat'l Cas. Co. v. Forge Indus. Staffing, Inc.*, 567 F.3d 871, 874 (7th Cir. 2009) ("an insurer has this right so that it may protect its financial interest in the litigation's outcome and minimize unwarranted liability claims.").

Amerisure further explains that CMW also has conceded that, absent a conflict of interest, an insurer's right to select defense counsel is inherent in the insurer's right to control the defense, pointing to *Armstrong Cleaners*. Because Amerisure has assumed the defense of the claims asserted against CMW without any reservation of rights, Amerisure explains that there is no conflict of interest, and thus, it is entitled to select the defense team for CMW.

Amerisure argues that CMW has no likelihood of success on the merits under the theories of waiver and estoppel because there has been no express waiver and there is no prejudice to CMW. In order for waiver to apply, there must be an intentional, express relinquishment of rights, and Amerisure simply did not intentionally and expressly waive any rights. Silence or inaction cannot be the basis for an express waiver. *See Tate v. Secura Ins.*, 587 N.E.2d 665, 671 (Ind. 1992); *Westfield Nat'l Ins. Co. v. Nakao*, 963 N.E.2d 1126, 1132 (Ind. Ct. App. 2012). Amerisure points out that CMW argues only that Amerisure's alleged delay in asserting its rights and its acquiescence to CMW's selection of counsel amounts to waiver; thus, there is no express waiver.

Implied waiver or estoppel may apply when express waiver does not apply. However, in order for implied waiver or estoppel to apply, CMW must have suffered prejudice as a result of Amerisure's actions or inaction. Amerisure points to the decisions in *Tate* and *Nakao* for this argument. Amerisure argues that CMW cannot show that it detrimentally relied on Amerisure,

9

thereby leading to prejudice, because Amerisure assumed CMW's defense without any reservation of rights and has fully paid the invoices submitted to it by CMW. Amerisure has agreed to continue paying for CMW's defense after the matter is transferred to Amerisure's chosen defense team. Furthermore, Amerisure has agreed to pay both CMW's chosen defense team and its own chosen defense team during the time of transition. Therefore, CMW cannot show that it has been or will be prejudiced. Amerisure explains that, without an express waiver and without prejudice, CMW has no likelihood of success on the merits under its theories of waiver and estoppel.

Concerning irreparable harm and adequate legal remedies, Amerisure explains that CMW's concern over any potential delays in the clean-up is unfounded because Amerisure has agreed to continue paying Ice Miller and Environmental Forensic Investigations until the matter is transitioned to the new defense team. Thus, work at the Property can continue to move forward without delay. Amerisure also explains that the counsel and consultant of its choosing have extensive experience working with IDEM, so CMW's concern about a damaged relationship with IDEM is also unfounded. CMW has failed to specify any set deadlines imposed by IDEM, making the argument of missed deadlines unfounded. Finally, CMW's concern about missed opportunities for property development and use are highly speculative and purely financial. Therefore, legal remedies (money damages) are adequate to address any potential injury suffered by CMW, precluding a preliminary injunction.

Amerisure asserts that the balance of harms does not favor an injunction because the absence of an injunction will not leave CMW without any defense and will not require CMW to start paying for its defense. Amerisure has agreed without reservation of rights to provide coverage, has paid for the defense, and will continue to pay for the defense. CMW suffers no harm without an injunction. On the other hand, Amerisure will not be able to ensure that the defense

work being completed is reasonable and necessary and not duplicative if an injunction is granted, thereby depriving it of its contractual right to control the defense.

Amerisure agrees with CMW that a speedy clean-up will benefit the public. It has agreed to pay CMW's chosen defense team during the time of transition to Amerisure's chosen defense team, who also has extensive experience working with IDEM on environmental claims, which will allow for the clean-up to proceed in a timely manner. Amerisure also asserts that the public interest is advanced when courts honor the freedom to contract, and the insurance contracts plainly state that Amerisure has the right to control the defense. Thus, Amerisure argues, a preliminary injunction in favor of CMW is inappropriate.

During the preliminary injunction hearing, CMW's environmental consultant conceded that many other environmental consultants—including Amerisure's chosen consultant—are capable of performing the work necessary to clean up the Property and have working relationships with IDEM.

When asked during the hearing about the purely financial nature of the harms CMW has asserted that it will suffer, CMW conceded that the environmental claims brought by IDEM and BPI against CMW are claims that Amerisure has agreed to defend without any reservation of rights and that Amerisure has been paying the defense costs, so these costs were not at issue. Then CMW argued that the potential lost development opportunities and investment opportunities were harms that could not be remedied by a monetary award because CMW could not establish a current value of the Property. Yet, in its own Verified Complaint, CMW alleged that the Marion County Assessor's office has established the current assessed value of the Property to be $1,924,600.00 ([Filing No. 1 at 3](#)).

Because Amerisure has not reserved any rights and has been paying all the defense fees and costs to date, the Court is hard-pressed to find a conflict of interest that would override the express and plain contractual right of Amerisure to control the defense of the claims asserted against CMW, which are insured under the insurance contracts. Amerisure has not expressly waived its rights, and there is no implied waiver or estoppel because CMW has not and will not suffer prejudice because Amerisure has been paying all defense costs without a reservation of rights. Therefore, the Court determines that CMW has failed to show a reasonable likelihood of success on the merits of its waiver and estoppel claims.

The potential harms alleged by CMW—lost property value, lost development opportunities, lost investment opportunities, payment of environmental attorney and consultant fees—are each purely monetary harms that can be adequately remedied by a legal remedy. Any irreparable harm asserted by CMW—delays in the clean-up, missed IDEM deadlines, and a damaged relationship between CMW and IDEM—appears to be highly speculative because Amerisure has paid and promises to continue to pay all defense costs, and it is selecting an environmental defense team that has experience working with IDEM on projects similar to the Property. Further, there is no evidence of missed IDEM deadlines or impending IDEM deadlines.

Both CMW and Amerisure agree on the public interest being served by a speedy clean-up of the Property. The freedom to contract and the Court's enforcement of unambiguous contractual terms is equally important as honoring the attorney-client relationship and allowing a client to choose its own counsel. In light of these determinations, it is clear that a preliminary injunction is not warranted in this action.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** CMW's Motion for Preliminary Injunction ([Filing No. 5](Filing No. 5)).

**SO ORDERED.**

Date: 12/27/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew Bentley Janutolo
GOODIN ABERNATHY LLP
ajanutolo@goodinabernathy.com

Karl G. Popowics
GOODIN ABERNATHY LLP
kpopowics@goodinabernathy.com

Robert D. Zink
GOODIN ABERNATHY LLP
rzink@goodinabernathy.com

Kaitlyn Jordan Marschke
ICE MILLER LLP
katie.marschke@icemiller.com

Adam Arceneaux
ICE MILLER LLP
adam.arceneaux@icemiller.com

Nicholas B. Reuhs
ICE MILLER LLP
nicholas.reuhs@icemiller.com